UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARVIN DEARING, | Civil Action No. 1:17-cv-425 |
| Plaintiff, | Black, J. |
| | Bowman, M.J |
| vs. | |
| MR. WEAKS, *et al.*, | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff Marvin Dearing, an inmate proceeding pro se and *in forma pauperis*, brought the instant civil action under 42 U.S.C. §1983. This matter is now before the Court on Defendants' motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and the parties' responsive memoranda. (Docs.12, 15).

**I.   Background and Facts**

In his complaint, Plaintiff alleges that in April 2016, he requested a copy of his birth certificate from the Bureau of Vital Statistics in an attempt to effectuate a name change.  In this regard, Plaintiff claims that the Bureau of Vital Statistics informed him on November 11, 2016 that a copy of Plaintiff's birth certificate was mailed on May 28, 2016.[1] (Doc. 1, Ex. A).  Thereafter, on November 13, 2016, Plaintiff filed an informal complaint with prison officials stating that the mailroom was unjustifiably holding his birth certificate. (Doc. 1). After receiving a response on November 21, 2016, Plaintiff appealed the result on December 8, 2016. (Doc. 1, Ex. B). His appeal was denied as untimely and because there was no allegation of a violation of rule or policy. (Doc. 1,

---

[1] Defendants point out that November 11 is Veteran's Day and the Bureau of Vital Statistics was closed that day.

Ex. C). Plaintiff was also informed that his birth certificate was being held by the Cashier's Office per Ohio Department of Rehabilitation and Correction ("ODRC") policy. *Id.* Subsequently, Plaintiff appealed this decision to the Office of the Chief Inspector. However, the Chief Inspector affirmed the decision as untimely and not in violation of any institutional rule or policy. (Doc. 1, Exs. D-E).

In light of the foregoing, Plaintiff filed the instant action against the Defendants for alleged violations of his First and Fourteenth Amendment rights. Upon initial screening of the complaint pursuant to the Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b), Plaintiff's due process claims were dismissed. Plaintiff's first amendment claim was permitted to proceed. (Doc. 8).

Defendants now seek to dismiss Plaintiff's First Amendment claim. Specifically, Defendants contend that Plaintiff's claim fails as a matter of law because he failed to exhaust his administrative remedies and his claim is not protected by the First Amendment. Defendants further assert that they are entitled to qualified immunity.

**I.     Analysis**

*A.     Standard of Review*

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims. The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services,* 135 F.3d 389, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir. 1974). A complaint

must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB,* 135 F.3d at 405 (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

      *B. Exhaustion under PLRA*

Pursuant to the PLRA, prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. See 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). *In Porter v. Nussle*, the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299, n. 1, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). It has become well-established that

"exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 204 (2007).

The PLRA requires "proper exhaustion of all administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S. 81, 88–90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2002). The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance. That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* at 82. If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 Fed. Appx. 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a)); see also *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).

"Exhaustion may not be completed after a federal complaint has been filed." *Hopkins*, 84 Fed. Appx. at 527 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system to every inmate at each of its institutions. Ohio Admin. Code 5120–9–31(K) (2013) (West). All inmates and staff members receive a written explanation of the grievance system and instructions for its use. § 5120–9–31(C). The first step of the grievance procedure allows inmates to submit an informal complaint

4

to the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from the date of the event giving rise to the grievance. OAC § 5120–9–31(K)(1).

Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services, and filing a formal grievance at the prison where the inmate is confined. § 5120–9–31(K)(2). Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. OAC § 5120–9–31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of the Inspector of Institutional Services, and submitting an appeal to the Office of the Chief Inspector at ODRC. OAC § 5120–9–31(K)(3). The step three appeal must be filed within fourteen days of the inmate receiving a disposition to his formal complaint. OAC § 5120–9–31(K)(3). The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the time frame for good cause and notifies the inmate. OAC § 5120–9–31(K) (3). Decisions of the Chief Inspector are final—meaning the Ohio Administrative Code provides no further means for appeal. OAC § 5120–9–31(K)(3). Here, Defendants argue that Plaintiff's complaint should be dismissed based upon an alleged failure to exhaust his administrative remedies.

Here, the record indicates that Plaintiff filed his informal complaint on November

5

13, 2016. (Doc 1, Ex. A). Plaintiff's informal complaint states, *in toto,* "On 5-28-16, The Cleveland Ohio Bureau of Vital Statistics Informed Me They Sent Me a copy of My Birth Certificate." *Id.* This informal complaint was denied as untimely due to the supervisor's interpretation of the complaint that Plaintiff learned of the mailing on May 28. This is an understandable interpretation based on how the complaint was written. Plaintiff then filed his Notification of Grievance with the Institutional Inspector, it was denied as untimely but also on the merits. (Doc. 1, Exs. B-C). Plaintiff then proceeded to the third step of the procedure and filed an appeal to the Office of the Chief Inspector. (Doc. 1, Ex. D).

In light of the foregoing, Defendants contend that Plaintiff failed to properly exhaust his administrative remedies. Notably, Plaintiff filed his informal complaint on November 13, 2016[2]; the response was written on November 21, 2016. On November 22, Plaintiff requested a grievance form. Plaintiff filed his Notification of Grievance on December 8, 2016, the day he received the form, a total of seventeen (17) days after the informal complaint response. Defendant responded on December 14, 2016 again finding the grievance untimely but also informing Plaintiff his birth certificate was being held in the cashier's office pursuant to prison policy. Plaintiff filed an appeal on December 17, 2016. The Chief Inspector affirmed the decision on January 31, 2017 as untimely but also addressed the merits of Plaintiff's complaint. Defendants' contend that Plaintiff he did not comply with the applicable deadlines, and therefore, Plaintiff failed to properly exhaust his administrative remedies. Defendants' contention is not

---

[2] Plaintiff alleges in the complaint to this Court that on November 11 he learned that his birth certificate was mailed on May 28. Had the informal complaint been clear as to when he learned of this mailing, the Defendants' response regarding the timeliness of the complaint may have been different.

well-taken.

Here, assuming Plaintiff's allegations are true, Plaintiff filed his informal complaint the day after he received notice that the Bureau of Statistics previously sent him his birth certificate. In addition, Plaintiff alleges that he did not timely receive the Notification of Grievance Form from the Inspector and it was this delay that caused his grievance to be filed 17 days after the response to the informal complaint. Furthermore, the Chief Inspector did not timely respond to Plaintiff's grievance. Notably, the Chief Inspector is to rule within 30 days. He failed to do so. In light of the foregoing, the undersigned declines to determine that Plaintiff failed to exhaust his administrative remedies. Accordingly, Plaintiff's claims will be addressed on the merits.

*C. Violation of First Amendment Rights*

To establish a claim under § 1983, two elements are required: (1) conduct committed by a person acting under the color of state law that (2) deprives a plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Gomez v. Toledo*, 446 U.S. 635 (1980); *Sargi v. Kent City Board of Educ.*, 70 F.3d 907, 913 (6th Cir.1995).

Here, Plaintiff contends that the "Defendants' failure" to provide him with his birth certificate violates his right to receive incoming mail as protected by the First Amendment. Plaintiff's contention fails as a matter of law.

As noted by Defendants, the Supreme Court previously held that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Additionally, the Court held that prison

7

restrictions that allegedly inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. *Id.* "Thus, it is well established that "[c]ourts owe 'substantial deference to the professional judgment of prison administrators.'" *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

Here, in compliance with Ohio Revised Code 5120.01, ODRC policy 61-PRP-01 establishes policy and procedures regarding authorized personal property items for inmates. The policy specifically states:

> Inmates shall be required to send their personal property, such as birth certificate, driver's license/state identification, social security card etc., outside the institution unless s/he has sixty (60) days or less to serve. In such instances, the property shall be held in the cashier's office until the inmate's release.

ODRC Policy 61-PRP-01(VI)(A)(9).

Plaintiff appears to contend that this policy violates his rights under the First Amendment and/or somehow impedes on his access to the Court. Plaintiff, however, fails to elaborate on this assertion; and more importantly, fails to allege how he has been injured by this alleged unconstitutional policy. Alleging such an injury is required to withstand a motion to dismiss. Notably, it is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments of the Constitution. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, to state a claim, an inmate must show that any barrier that impeded his access to the courts caused actual injury in his pursuit of a legal claim. *Lewis v. Casey,* 518 U.S. 343, 351 (1996). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 U.S. App. LEXIS

8

34257, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Plaintiff failed to do this.

Here, other than stating that his First Amendment rights have been violated, Plaintiff has not alleged that he has suffered any injury based upon this prison policy. The court does sympathize with Plaintiff's frustration that he was not informed that the birth certificate had arrived and was being held by the Cashier. However, this lack of information does not rise to the level of a First Amendment violation.

As noted by the Defendants, the filing of a name change is a voluntary action permitted by Ohio Revised Code 2717.01. Name change proceedings do not have a statute of limitations and Plaintiff is not prevented from changing his name now or at a later date. As Plaintiff correctly pointed out he is serving more than 60 days and as such, Plaintiff should be required to send his birth certificate outside the institution. In fact, there is no reason Plaintiff could not direct the cashier to send his birth certificate directly to the probate court. In light of the foregoing, the undersigned finds that Plaintiff's complaint fails to state a claim for relief under section 1983 because he fails to sufficiently allege a violation of his constitutional rights.

Last, Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity "shields governmental officials from monetary damages as long as 'their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sumpter v. Wayne Cty*, 2017 FED App. 0187P, No. 16-2102, 2017 U.S. App. LEXIS 15649, 2017 WL 3568607, *6 (6th Cir. Aug. 18, 2017) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Defendants contend that they are entitled to qualified immunity because an inmate has no clearly established constitutional right to possess his birth certificate.

9

Defendants further contend that inmates do not have an unfettered right to receive all incoming mail. The undersigned agrees. *See Pearson v. Callahan*, 129 S.Ct. 808 (2009) (A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct).

**II.    Conclusion**

In light of the foregoing, the Court **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 12) be **GRANTED** and this matter be **CLOSED.**

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MARVIN DEARING,

    Plaintiff,

vs.

MR. WEAKS, *et al.*,

    Defendants.

Civil Action No. 1:17-cv-425

Black, J.
Bowman, M.J

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).